**UNITED STATES COURT OF APPEALS**

**FOR THE NINTH CIRCUIT**

**NINTH CIRCUIT COURT OF APPEALS DOCKET NUMBER 13-15545**

| | |
|---|---|
| **JEANETTE K. LANSBURG; LARRY J. ENCINAS,**<br><br>**Plaintiffs – Appellants;**<br>**vs.**<br><br>**FEDERAL HOME LOAN MORTGAGE CORPORATION, a foreign Corporation, SAXON MORTGAGE SERVICES, INC., a foreign Corporation;**<br><br>**Defendant - Appellees.** | **REPLY BRIEF OF APPELLANTS JEANETTE K LANSBURG AND LARRY J. ENCINAS** |

**APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF ARIZONA**
**DOCKET NUMBER CV-11-01529-HRH**

**THE LAW OFFICES OF MICHAEL S. DEFINE, LLC**
**Michael S. DeFine, Bar No. 020425**
**Post Office Box 1810**
**Sun City, Arizona 85372**
**Attorney for Appellants**

# TABLE OF CONTENTS


**TABLE OF CONTENTS……..………………………………….. ii**

**TABLE OF AUTHORITIES............…………………………… iii**

**INTRODUCTION…………………………………………….. 1**

**RESPONSE TO APPELLEES' STATEMENT OF THE CASE.……………………………………………..………… 1**

**ARGUMENT………………………………………………….. 2**

**A. THERE ARE GENUINE ISSUES OF MATERIAL FACTS ON PLAINTIFFS' BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING CLAIM.…………………………..... 2**

**1. THE TPP IS AN ENOFRCEABLE CONTRACT …………………………………….………..……. 3**

**2. APPELLEES' BREACHED THE IMPIED COVENANTS OF GOOD FAITH AND FAIR DEALING…………………………………………. 6**

**B. THE DISTRICT COURT'S GRANTING OF SUMMARY JUDGMENT ON THE DECLARATORY CLAIM WAS NOT PROPER…………………….... 10**

**C. APPELLANTS DO NOT RAISE NEW ISSUES FOR THE FIRST TIME ON APPEAL.……………….…. 10**

**CONCLUSION……………………………………………. 12**

**CERTIFICATE OF COMPLIANCE……………………. 13**

**PROOF OF SERVICE……………………………………. 14**

# TABLE OF AUTHORITIES

**CASES:**

*Corvello v. Wells Fargo Bank, N.A.*,728 F.3d 878 (9th Cir. 2013) ………………………………………………………………………..................… 1, 3, 5, 6, 12

**STATUTES:**

A.R.S. §12-341…………………………………………………………....…12

A.R.S. §12-341.01. …………………………………………………………12

## I. INTRODUCTION

Appellees Answering Brief (hereinafter "AAB") attempts to argue that this case is not similar in any way to this Court's recent review and holding in *Corvello v. Wells Fargo*, 728 F.3d 878 (9th Cir. 2013) despite the fact that the clear language of the contract in this case is substantially similar, if not identical to the same language in the contract in *Corvello*. Appellees further argue that the Appellants did not assert any claim for breach of contract (Appellees' Answering Brief ("AAB"), pages 15 and 25 of 29) despite the clear language of the complaint filed in this matter, as well as the pleadings lodged in regards to the Motion for Summary Judgment that is at issue in this appeal. Appellees conclude that as a result, the trial court's granting of their Motion for Summary Judgment was appropriate.

Appellees' arguments ignore the basic principles of contract law and the facts actually alleged in the complaint and numerous pleadings filed in this matter. For the reasons stated below and in appellants' opening brief, the District Court's rulings should be reversed and the judgments in favor of appellee vacated.

## II. RESPONSE TO APPELLEES' STATEMENT OF THE CASE

The relevant case background and pertinent facts are presented in Appellants' opening brief. Appellants do not repeat the background and facts

except to respond to Appellees' mischaracterizations, which are refuted more fully below.

First, Appellees' allege that they did not offer to permanently modify the Appellants loan as part of the TPP at issue in this matter. (AAB, pages 3 and 4 of 29). However, the TPP itself clearly states that if the Appellants were in compliance with the terms of the TPP, then the "Lender will provide me with a Home Affordable Modification Agreement ("Modification Agreement") as set forth in Section 3…" ER 313.

Second, Appellees attempt to argue that the Appellants failed to make their monthly payments under the TPP and as a result, because they were not in compliance with the terms of the TPP they were not entitled to a loan modification. (AAB, page 4 of 29). However, this claim is contradicted by the findings of the District Court in the Order Granting the Defendants' Motion for Summary Judgment, wherein the District Court concluded that evidence was submitted by the Plaintiffs supporting the fact they made their first three TPP payments. ER 10 and ER 11.

## III. ARGUMENT

### A. There Are Genuine Issues of Material Facts on Plaintiffs' Breach of the Implied Covenant of Good Faith and Fair Dealing Claim.

Appellees claim that no issue of material fact exists concerning the Plaintiffs'' claim for breach of contract and as such, the District Court's holding in granting the Appellees' Motion for Summary Judgment was appropriate. However, this claim is clearly contradicted by the District Court's ruling as it did not consider any facts other than that there was no enforceable written contract concerning a loan modification since neither the servicer ("Saxon Mortgage") nor the lender ("Freddie Mac") signed the TPP and had not returned a copy of the document to the borrower.

**1. The TPP is an Enforceable Contract**

Appellees argue that Plaintiffs' claim for violations of the obligation of good faith and fair dealing fails because, "courts in the Ninth Circuit have consistently held that trial payment plans do not create permanent modification rights." (AAB, page 14 of 29). This argument by the Appellees is specious, without legal basis and clearly contradictory to this Court's holding in *Corvello.*

In *Corvello*, the lender failed to sign the TPP and return it to the borrower. The lender then accepted the TPP payments from the borrower and then proceeded to foreclose on the real property by claiming that because the lender never signed the TPP, no modification was ever made. Further, the lender argued that even if they had signed it, they still had not made any promise to modify the borrowers' loan. The borrowers brought suit and among their claims, they alleged breach of

contract and a violation of the obligation of good faith and fair dealing. The District Court dismissed the lawsuit alleging that the claims failed because the lender did not sign and return the TPP and according to its very terms, because of this, no contract existed.

In this matter, the Plaintiffs signed their TPP in June 2009, mailed it back and sent in the three required payments. The Plaintiffs admit that they did not get a signed copy back, but also claim that at the termination of the three month trial payment plan, they were not advised that they were denied nor advised that they were approved for a loan modification as required by the very terms of the TPP. Instead they were told to continue to make payments. However, their home was sold in June 2010 and they were finally notified that they were denied for a modification in September 2010. While it is inapplicable to the breach of contract/good faith fair dealing claim, HAMP regulations in place at the time required that the Appellees provide either written notice of denial or a loan modification by the termination of the three month trial period plan. (See ER 53, Home Affordable Modification Program Guidelines, specifically ER 72-75). Further, the terms of the TPP signed by the Appellants required that if they were in compliance with their obligations under the TPP at the end of the three month period, they would receive a permanent loan modification. (ER 313).

Appellees attempt to argue that the Appellants unilateral change of the due date of the payments under the TPP somehow affected the validity of the TPP itself. However, the interpretation of the TPP and its terms hinges upon the HAMP Regulations in effect at the time. While it is true a private right of action cannot be maintained under HAMP, the regulations specifically control the interpretation and review of the TPP. Here, the HAMP regulations specifically stated that:

> The first Trial Period payment is due with the return of the Workout Plan. The Servicer must require the Borrower to remit timely payments; however, all Trial Period payments must be received no later than the last Business Day of the third month of the Trial Period. (ER 72, at paragraph b.)

In addition, the District Court specifically stated that:

> Plaintiffs contend that they made the three trial payments required under the Trial Period Plan. They have submitted evidence that shows that they made payments under the Trial Period Plan in June and July 2009. On August 12, 2009, the servicing of plaintiffs' loan was transferred to Saxon. Saxon contends that plaintiffs did not make the August 2009 payment, but plaintiffs have submitted evidence to the contrary. On August 6, 2009, Ms. Lansburg sent an email to Sparta, the loan servicer for Taylor Bean advising that she was overnighting their third trial mortgage payment, which cleared plaintiffs' bank on September 14, 2009. (ER 10 and 11).

Clearly, the Plaintiffs were in compliance with all their obligations under the TPP at the conclusion of the trial payment period and as a result, the Appellees were required to either provide the Plaintiffs with a loan modification or deny them in writing under the terms of the TPP. This Court's ruling in *Corvello* makes it

very clear that a lender cannot deny the formation of the TPP once the borrower has signed the documents, mailed them in and performed their obligations under the TPP. As this Court said in *Corvello*:

> Wells Fargo's interpretation of the TPP was suspect because it allowed banks to avoid their obligations to borrowers merely by choosing not to send a signed Modification Agreement, even though the borrowers made both accurate representations and the required payments. As the Seventh Circuit put it, Wells Fargo's interpretation would allow it to "simply refuse to send the Modification Agreement for any reason whatsoever —interest rates went up, the economy soured, it just didn't like [the Borrower]—and there would still be no breach ...turn[ing] an otherwise straightforward offer into an illusion." *Id.* We believe the reasoning in *Wigod* is sound. Paragraph 2G cannot convert a purported agreement setting forth clear obligations into a decision left to the unfettered discretion of the loan servicer. 728 F.3d 878 at 882.

The TPP is the written contract at issue in this matter, despite the claims of the Appellees to the contrary. Appellants have properly alleged that they complied with their duties and obligations under the TPP and the Appellees failed to comply with their obligations once the Appellants fully performed their duties.

**2. Appellees' Breached the Implied Covenants of Good Faith and Fair Dealing**

Appellees also argue that there is no evidence that the Appellees breached the implied covenants of good faith and fair dealing because there is no evidence to show that they did anything to impair adversely on the Appellants' reasonably expected benefit of the bargain. Appellees argue that the only possible contract

that could be at issue is the TPP. (AAB, pages 17 and 18 of 29). Further, they contend that the TPP does not promise a loan modification, but only a review. (AAB, page 18 of 29) Finally, they contend that the Appellants loan modification was properly denied. *Id.*

Appellees are correct in that the contractual terms at issue are the terms of the TPP. Appellants incorporate their arguments above herein in partial response to the Appellees arguments in this portion of their brief. Further, Appellants contend that the trial court never considered any of the alleged "evidence" submitted in the Appellees' Answering Brief under Paragraph VI (A) (2) and this argument is without merit and contrary to the evidence.

The District Court stated in the Order granting the Motion for Summary Judgment that:

> But even assuming that plaintiffs and Taylor Bean and/or Saxon orally agreed that the Trial Period Plan had gone into effect and thus could be considered an enforceable contract, there is no evidence that Saxon acted in a manner that "impair[ed] the right[s] of [plaintiffs] to receive the benefits which flow from" the Trial Period Plan. Rawlings, 726 P.2d at 569. The Trial Period Plan contains no guarantee that plaintiffs' loan would be modified. (ER 17)

This holding is directly contrary to the claims of the Plaintiffs and the express written terms of the TPP. The TPP specifically advised the Plaintiffs that if they were in compliance with the terms of the TPP, then the "Lender will provide me with a Home Affordable Modification Agreement ("Modification

Agreement") as set forth in Section 3…" (ER 313, Initial Paragraph of the TPP). The remaining portions of the Appellees' argument concerning the alleged evidence and its applicability clearly was never reviewed by the District Court because it concluded that the TPP was not an enforceable contract, and even if it were, it did not provide any guaranty for a loan modification which is directly contrary to the written language of the TPP.

As for the claims of the Appellees that even if the TPP was enforceable, because the Appellants did not complete their obligations under the TPP they were not entitled to enforce any of the terms, this is and was a factual dispute in the underlying matter which the District Court clearly did not entertain or make any factual conclusions about except to conclude that the Appellants provided sufficient documentation to show that they were in compliance with their obligations under the TPP.

The District Court stated in the Order Granting Summary Judgment that:

> Plaintiffs contend that they continued to make mortgage payments to Saxon after they made the third trial payment in August 2009. Plaintiffs have submitted evidence that suggests that payments were made in September, October, and November 2009, although there were apparently some problems with the September and October checks because of plaintiffs' bankruptcy filing. It is undisputed that plaintiffs made their last mortgage payment in June 2010. On May 26, 2010, plaintiffs advised Saxon that they had started the HAMP loan modification program with Taylor Bean and that they should not have been taken out of the program because they were not behind on their

> payments. The real property was sold at a trustee's sale on June 14, 2010.
>
> On September 3, 2010, even though the real property had already been sold, Saxon advised plaintiffs that it "is unable to provide you with a Home Affordable Modification Program [loan modification] agreement because ... [y]ou did not make all of the required Trial Period Plan payments by the end of the trial period." The letter also advised plaintiffs that they had thirty days in which to contact Saxon regarding their loan and that their "loan may be referred to foreclosure during this time, or any pending foreclosure action may continue. However, no foreclosure sale will be conducted and you will not lose your home during this 30-day period. ER 12 and 13.

Appellees claim in their Answering Brief that the Appellants failed to submit documents and payments in accordance with their requests, yet the evidence considered by the District Court clearly contradicts these claims. The written denial letter from Appellees issued more than a year after the required third payment under the TPP shows that their denial was based solely on alleged untimely payments which the District Court already concluded that the Plaintiffs produced evidence showing the payments *were* timely. Appellants complied with every duty and obligation under the written contract and the Appellees interfered with their expectations from the written document by failing to modify their loan or give them proper notice concerning a denial as well as by selling the home without the proper denial under the HAMP regulations or the written contract. In fact, the Appellees continued to receive monthly payments despite their contention

that they did not get them after the three month TPP was over according to the District Court.

### B. There District Court's Granting of Summary Judgment on The Declaratory Claim Was Not Proper.

Appellees claim that the Appellants failed to make any argument concerning the Declaratory Claim in this matter. However, that is incorrect. The District Court properly concluded that the declaratory claim could not proceed where there was no other underlying claim. The Appellees have alleged the same in their Answering Brief. The Appellants agree with this allegation concerning their Declaratory Claim and that it hinges on whether there is an underlying claim for regarding the good faith and fair dealing issue. If this Court concludes that the District Court's ruling on the Motion for Summary Judgment was erroneous based on the law and facts of this case, then by reinstating the good faith and fair dealing claim, this Court should reinstate the declaratory relief claim as requested by Appellants in their Opening Appeal Brief. Appellants also incorporate their arguments above concerning the enforceability of the TPP as the second contract herein in response to the claims of the Appellees in Paragraph VI (B) of their Answering Brief.

### C. Appellants Do Not Raise New Issues For the First Time On Appeal.

Appellees also claim that the Appellants have raised new issues for the first time on appeal. They claim that the Appellants have raised the issue of promissory estoppel and breach of contract for the first time on this appeal and that the issues were not raised below. However, a review of the Excerpt of Record in this matter will clearly show that these issues were all raised in the District Court before the appeal was ever taken and in response to the Appellees' Motion for Summary Judgment.

Plaintiffs' Response to Defendants' Motion for Summary Judgment (ER 194-209) clearly shows that both issues were raised with the District Court. In fact, the issue over breach of contract was part of the Verified Complaint in this matter and is stated in Paragraph 55-66 of the Verified Complaint. (ER 449-450). Paragraph 56 of the Verified Complaint states specifically that, "Inherent in every contract are the obligations of good faith and fair dealing." (ER 449) This is the section pertaining to allegations alleged in the factual portion of the Verified Complaint, as well as the claim for the breach of the obligation of good faith and fair dealing. (ER 449).

Finally, the promissory estoppel claim is raised Plaintiffs' Response to Defendants' Motion for Summary Judgment at ER 204 under the provisions of the Doctrine of Full Performance and the numerous cases cited therein in support of

such. It is clear that these are not new claims and any such allegation by the Appellees is without merit under the circumstances of this case.

**CONCLUSION**

Pursuant to this Court's ruling in *Corvello v. Wells Fargo Bank, N.A.*, the district court's granting of the Appellees' Motion for Summary Judgment was erroneous under the facts of this case. The Appellees provided the Appellants with a written TPP agreement, which the Appellants signed and returned, along with monthly payments and the Appellees then decided not to sign and return a copy or to comply with their obligations under the TPP Agreement. The Appellees should not have the right to claim the benefits of the TPP without the obligations imposed upon them. As such, this Court should reverse the ruling of the District Court in granting the Motion for Summary Judgment so that a trial on the merits may occur. Further, the written agreement at issue in this matter entitles the Appellants to an award of attorney fees and costs pursuant to Arizona Revised Statutes, §12-341 and §12-341.01.

RESPECTFULLY SUBMITTED this 21st day of April, 2014.

By: */s/ Michael S. DeFine*_____
Michael S. DeFine, Esq.

**CERTIFICATE OF COMPLIANCE WITH FED. R. APP. PROC. RULE 32(a)(7)(C) AND CIRCUIT RULE 32-1 FOR DOCKET NUMBER 13-15545**

I, Michael S. DeFine, certify that:

Pursuant to Federal Rules of Appellate Procedure, Rule 32(a)(7)(C) and Ninth Circuit Rule 32-1, the attached answering brief is proportionately spaced, has a typeface of 14 points or more and contains 3,086 words.

Dated: April 21, 2014

By: /s/ *Michael S. DeFine*_____
Michael S. DeFine, Esq.

## PROOF OF SERVICE

I hereby certify that on April 21, 2014, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the Electronic Mail Notice List.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct and that this declaration was executed in Phoenix, Arizona on April 21, 2014.

Dated: April 21, 2014

By: /s/ *Michael S. DeFine*_____
Michael S. DeFine, Esq.